ZEL M. FISCHER, Judge.
I dissent from the principal opinion. In my view, the procedural posture of this case bars Vogl’s requested relief. Vogl filed his original Rule 24.035 motion in March 2008. After sustaining his post-conviction counsel’s motion to rescind appointment, the motion court dismissed Vogl’s Rule 24.035 motion in April 2008. Vogl did not appeal the motion court’s dismissal. Rather, nearly three years later, Vogl filed a motion to reinstate his post-conviction proceedings, alleging that *231 he had been abandoned by postconviction counsel. That motion was overruled, and the appeal of his claim of abandonment was dismissed. A year later, and a full four years after his initial motion was dismissed, Vogl filed his third Rule 24.035 motion, alleging for the second time that his appointed post-conviction counsel had abandoned him. In my view, this third motion is a successive post-conviction motion filed in violation of Rule 24.035(Z) and Rule 75.01 and is barred by res judicata. Had Vogl wished to assert his claim that he was abandoned or his claim that his original motion was timely filed, Vogl either should have filed a motion to vacate the motion court’s judgment within that court’s 30-day post-judgment control provided under Rule 75.01 or appealed the dismissal to the court of appeals. Vogl also could have filed a motion for leave to file a late notice of appeal within 12 months after the judgment became final pursuant to Rule 30.03. Vogl’s failure to pursue his abandonment claim on direct appeal of the dismissal precludes relief, at this time. Further, the fact that Vogl has previously sought relief claiming abandonment, which was denied at the circuit court and appellate court levels, should result in the dismissal of this case based on res judicata.[1]
Facts and Procedural History
In 2007, Vogl pleaded guilty to two counts of statutory sodomy in the first degree, a felony for which the authorized term of imprisonment is life imprisonment or a term of years not less than five years. Section 566.062, RSMo Supp.2013. The circuit court sentenced Vogl to two concurrent terms of 15 years’ imprisonment. Vogl does not allege that he is actually innocent of the crimes to which he pleaded guilty. Furthermore, Vogl does not allege that his guilty plea was not knowingly, voluntarily, and intelligently entered. Yet, the principal opinion approves the use of a procedure in direct conflict with the express terms of this Court’s rules and creates new law — again muddying the abandonment waters. It does so in order for Vogl, who does not now claim innocence or challenge the validity of his guilty plea, to have a hearing on the merits of whether he was abandoned, despite his failure to raise this claim in the normal course of the procedures previously permitted by this Court. Especially troubling is that this is Vogl’s second “motion to reopen” his post-conviction proceeding, and nothing in the principal opinion would prohibit him from filing yet another motion.
Abandonment Claims Should Be Pursued on Direct Appeal According to McDaris
It is my view that Vogl was required to raise any abandonment claim in the initial motion court or in a direct appeal of the dismissal of his initial post-conviction motion. The principal opinion’s decision to grant Vogl relief on his “motion to reopen” postconviction proceedings, filed several years after his initial motion was overruled, is in direct conflict with this Court’s rules. Rule 24.035(Z j specifically provides, “The circuit court shall not entertain successive motions.” And Rule 75.01 specifically provides that the circuit court loses control over any judgment 30 days after entry. Remanding Vogl’s case for a merits hearing on Vogl’s allegations of abandonment permits a successive motion in violation of the clear and express terms of these rules.
As stated above, this is the third Rule 24.035 motion that Vogl has filed (and the *232 second motion claiming he was abandoned by post-conviction counsel). He filed his initial motion in March 2008, which the circuit court dismissed as untimely filed. Three years later, in March 2011, Vogl filed a “Motion to Reinstate Post-Conviction Action ... on Basis of Timely Filing,” claiming he was abandoned by post-conviction counsel. The motion court dismissed that motion, stating, “This Court has previously dismissed this action with prejudice for failure to file Motion within the time allowed by the rules. This Court will take no further action on this file.” Vogl appealed the motion court’s action, and in May 2012, the court of appeals dismissed the appeal because Vogl failed to file the record on appeal. Vogl did not seek transfer to this Court. The principal opinion fails to explain why the failure to proceed with the appeal of that' motion does not preclude the relief Vogl seeks here.
The subject of this appeal is Vogl’s third Rule 24.035 motion (his second motion claiming abandonment), titled “Motion to Reopen Post Conviction Proceeding” and filed in May 2012. The circuit court overruled the motion, stating, “As in my entry of November 4, 2011 the Court notes that this action was previously dismissed with prejudice for failure to file Motion within the time allowed by the rules. Motion to reopen is overruled.” This case, therefore, represents Vogl’s third bite at the postcon-viction apple.[2]
This Court’s rules,, as written, outline the appropriate procedures for bringing and reviewing post-conviction motions. These same rules are designed to prevent unrestrained relitigation of claims that were, or should have been, brought in earlier proceedings. Specifically, three rules work in concert to achieve these goals.
First, Rule 75.01 gives a circuit court control over a judgment for 30 days after the judgment is entered. That rule states, “The trial court retains control over judgments during the thirty-day period after entry of judgment and may, after giving the parties an opportunity to be heard and for good cause, vacate, reopen, correct, amend, or modify its judgment within that time.” During this period, a post-conviction movant can move the court to reopen his or her case or vacate the judgment on any number of grounds, including that the pro se motion had been timely filed or that post-conviction counsel failed to file an amended motion or a statement why no amended motion was required. After the expiration of this 30-day period, however, the circuit court loses control over the judgment and loses the authority to vacate or reconsider the proceeding. While this rule specifically grants the circuit court control over the judgment, it also affirmatively cuts off that control after 30 days, prohibiting the circuit court from taking any further action on the matter.
Second, a post-conviction movant is also entitled to an appeal of the circuit court’s judgment pursuant to Rule 24.035(k). Subsection k permits the appellate courts to review the motion court’s ruling and to determine whether the findings and con- *233 elusions of the trial court were clearly erroneous. If a post-conviction movant believes that the circuit court erroneously dismissed his or her Rule 24.035 motion as untimely, then the movant is entitled to appeal that determination to the court of appeals. The movant may argue there that the circuit court erroneously dismissed the initial motion as untimely filed, that counsel abandoned him, or that the motion court failed to make an abandonment determination.
Lastly, Rule 24.035(Z) prohibits the filing of a successive Rule 24.035 motion. Under the express terms of this rule, a post-conviction movant is required to bring any post-conviction claims in one motion. Any successively filed motions, including those masquerading as “motions to reopen” or “motions claiming abandonment” are specifically prohibited by the express terms of this rule.
Abandonment, as originally conceived, was designed to fit within the framework of Rule 24.035(i), which granted an adequate opportunity for review, while also limiting the number of motions that could be filed and the time frame for review of an abandonment claim. When this Court created the abandonment doctrine, it also discussed the appropriate forum for the evaluation of such claims. As this Court discussed at length in Price v. State, 422 S.W.3d 292 (Mo. banc 2014), the abandonment doctrine in postconviction proceedings was introduced in Luleff v. State, 807 S.W.2d 495 (Mo. banc 1991), and Sanders v. State, 807 S.W.2d 493 (Mo. banc 1991). Luleff held that counsel’s complete failure to file an amended motion or a statement why no such amended motion is necessary amounts to abandonment by post-conviction counsel. Luleff also addressed the question of the appropriate forum for addressing abandonment claims. 807 S.W.2d at 497. Luleff determined that the initial motion court where the initial motion was being prosecuted is the correct place to address such claims, stating:
If presented with an opportunity to address claims regarding postconviction counsel, the motion court could appoint new counsel, if necessary, at that time. Should the motion court conclude there is no basis for the movant’s claim, a finding to that effect would alleviate the need for appellate courts to speculate as to what occurred in the circuit court. This Court holds that the appropriate forum for addressing claims regarding a complete absence of performance by postconviction counsel on a motion for posteonviction relief is in the circuit court where the motion is being prosecuted by [the] movant.
Id. Furthermore, this Court held that the motion court, during the initial post-conviction proceeding, has an obligation to determine whether the movant was abandoned by counsel prior to dismissing the initial post-conviction motion. Luleff stated:
At such time as the motion court may proceed to rule a postconviction motion and there is no record of any activity by counsel on movant’s behalf, the motion court shall make inquiry, sua sponte, regarding the performances of both movant and counsel.... If the court determines ... that counsel has failed to act on behalf of the movant, the court shall appoint new counsel, allowing time to amend the pro se motion, if necessary, as permitted under [the post-conviction rules].
Id. at 498 (footnote omitted).
Similarly, in Sanders, this Court determined that the initial motion court is the appropriate forum for addressing claims that a movant was abandoned due to counsel’s failure to timely file an amended motion. 807 S.W.2d at 495. There, the Court stated:
*234 For the reasons enunciated in Luleff ... it is expedient to address in the motion court claims regarding failure of post-conviction counsel to comply with the time requirements of [the post-conviction rules]. To conduct an inquiry into counsel’s apparent failure in this regard does not run afoul of [the post-conviction rules’ prohibition against the filing of successive motions]. The appropriate forum for addressing claims regarding failure of postconviction counsel to comply with the requirements of [the post-conviction rules] is in the circuit court where the motion is being prosecuted by movant.

Id.

In McDaris v. State, this Court outlined the procedure that the initial motion court is to follow when conducting the independent inquiry into whether a movant was abandoned by post-conviction counsel that Luleff and Sanders required. McDaris stated:
Pending issuance of a Rule change, the trial court should, as part of its independent inquiry under Luleff, inquire not only of postconviction counsel, but ensure that movant is informed of counsel’s response and given an opportunity to reply. The method of making this inquiry may be as formal or informal as the motion court deems necessary to resolve the question of abandonment by counsel, including, but not limited to, a written response and opportunity to reply, a telephone conference call, or a hearing. However, a sufficient record must be made to demonstrate on appeal that the motion court’s determination on the abandonment issue is not clearly erroneous.
843 S.W.2d 369, 371 n. 1 (Mo. banc 1992) (emphasis added). This Court has the authority to make a rule change, but it has not changed the procedure set out in McDaris.
Following these rules and precedents, there is little doubt that the appropriate forum for addressing Vogl’s abandonment claims was in the initial circuit court where the initial motion was filed. And there is little doubt that, under these precedents, the initial motion court should have made inquiry into whether Vogl was abandoned by counsel. If Vogl believed that the initial circuit court erroneously dismissed his motion, he was left with several options. He could have filed a motion to vacate the judgment within 30 days while the circuit court still had control over the judgment, or he could have appealed. Notably, and significant to the resolution of this case, Luleff and Sanders both involved direct appeals from initial motions in which this Court granted relief.
Despite this precedent and the language of this Court’s rules, the principal opinion permits, for the first time, a hearing on the merits of Vogl’s abandonment claim raised in what is his third motion. I acknowledge that this Court has made several statements that purport to permit the filing of such a “motion to reopen” and that these cases characterize abandonment as an “exception” to Rule 75.01. However, in my view, these cases are not binding on any court because they rely entirely on dicta and have never been necessary to resolve the issues presented. Moreover, these cases conflict with the rules and have led to an unending cycle of relitigation of “abandonment” claims, with some filings, as the principal opinion acknowledges, coming more than a decade after the initial motion was filed.[3]
*235 As noted, the concept of the “motion to reopen” post-conviction proceedings first appeared in dicta. The first time this Court mentioned the possibility of a “motion to reopen” was in State ex rel. Nixon v. Jaynes, 68 S.W.3d 210, 217-18 (Mo. banc 2001). In Jaynes, an inmate petitioned the circuit court for a writ of habeas corpus, arguing that his appointed post-conviction counsel had a conflict of interest because post-conviction counsel had also served as trial counsel. Id. at 213. This Court held that the inmate had not pleaded sufficient facts to show that he was entitled to habeas corpus relief. Id. At the end of the opinion, in dicta, the Court stated that, if the inmate could prove that he had been abandoned, he “may wish to move to reopen his original motion under Rule 29.15 in the sentencing court, provided that his original motion was timely filed.” Id. at 218. This statement cites no authority for such a motion and does not indicate that the Court considered the time limitations on such motions contained in this Court’s rules.
Later, in Taylor v. State, 254 S.W.3d 856, 857-58 (Mo. banc 2008), this Court stated that the “abandonment doctrine provides a narrow exception permitting the circuit court to re-open an otherwise final post-conviction case.” The Court cited the Jaynes dicta as its only authority for this proposition. Id. at 858. The Court did not engage in any analysis regarding Rule 24.035(£ )’s prohibition against successive motions. Nor did it examine why “abandonment” should be treated as an exception to any of this Court’s rules when the requested remedy could be obtained through direct appeal. Moreover, the Court went on to find that Taylor had not been abandoned by his post-conviction counsel. Id. at 858. The Court’s pronouncement that abandonment of post-conviction counsel serves as a “narrow exception” to the rule, therefore, was not necessary to the judgment and is not a “holding” of this Court.
In Crenshaw v. State, 266 S.W.3d 257, 259 (Mo. banc 2008), decided shortly after Taylor, this Court likewise stated, “Under this Court’s precedents, the motion court has authority to consider a motion to reopen [post-conviction] proceedings when it is alleged that a movant has been abandoned by his counsel.” Crenshaw cited a court of appeals opinion, Edgington v. State, 189 S.W.3d 703 (Mo.App.2006), to support that proposition. Edgington, in turn, cited the Jaynes dicta as authority. 189 S.W.3d at 706. The Court in Cren-shaw did not engage in any analysis regarding what gives the motion court such authority. Moreover, Crenshaw did not grant the movant relief. 266 S.W.3d at 260-61. In fact, the Court in Crenshaw declined to examine whether abandonment had occurred. Id. at 260.
In Gehrke v. State, 280 S.W.3d 54, 57 n. 3 (Mo. banc 2009), the Court again, this time in a footnote, stated that the circuit court has the authority to consider a motion to reopen post-convictions proceedings when the movant alleges abandonment. Gehrke cites Crenshaw, which, as noted, relies on a court of appeals opinion that cites Jaynes. Much like the other cases, Gehrke contains no analysis concerning the “exception” and holds that post-conviction *236 counsel did not abandon the movant. Id. at 58-59.
No case that the principal opinion or Vogl cites as authority to support the abandonment “exception” to the general rules concerning final judgments actually granted relief to the movant. And never has this Court analyzed the source of such “exception” or how that “exception” squares with Rule 24.035(£)⅛ prohibition against successive motions.[4]
The rules of this Court do not provide for a “motion to reopen.” Nor do they provide for a motion for post-conviction relief due to abandonment. Abandonment, as judicially created, was to be examined prior to the circuit court’s decision on the postconviction motion. The movant was free to argue that certain actions of counsel constituted abandonment during post-conviction proceedings or the direct appeal thereof. In my view, the cases relying on the Jaynes dicta are incorrectly decided in so far as they have suggested the use of a motion to reopen post-conviction proceedings, or any motion given another name alleging abandonment by appointed post-conviction counsel, without determining whether such a motion was a prohibited successive post-conviction motion.[5]
The principal opinion states that the Rule 24.035(0 prohibition against successive motions does not apply to abandonment claims because Rule 24.035 does not establish the procedure for abandonment claims. I could accept that position if the principal opinion was willing to follow this Court’s holding in McDaris which, pending a rule change, required abandonment claims to be made during the appeal of the postconviction motion. McDaris at 371-2. As stated previously, this Court has not adopted a rule providing for an alternative procedure to pursue abandonment claims.
The truly myopic aspect of the “motion to reopen” due to abandonment of postcon-viction counsel is its complete disregard of the importance of finality of judgments. As mentioned, permitting these “motions to reopen” as some kind of exception to both Rule 75.01 and Rule 24.035(1) permits *237 an endless cycle of relitigation of the same issue. This is exactly what these rules are designed to prevent. If “abandonment” somehow serves as an unlimited and unqualified exception to these rules, there is little to stop Vogl from filing another “motion to reopen” if he is ultimately unsuccessful on remand. If this Court does not follow its rules as written, there is no limit on the number of times a movant may allege abandonment in a “motion to reopen,” and there is no limit on the timing of such a motion.
Additionally, the puzzling part about the principal opinion’s decision to permit abandonment claims in a “motion to reopen” is that such a motion is completely unnecessary. Any colorable abandonment claim will be available to the movant in the initial motion court or on direct appeal because any successful claim of abandonment will be apparent from the record.[6] As noted, Price made clear that abandonment only occurs in two situations: 1) when appointed post-conviction counsel fails to file an amended motion or a statement why no motion is necessary or 2) when such a motion is necessary but is untimely filed by appointed counsel. 422 S.W.3d at 297-98. Either of these situations will be apparent from the face of the record in the initial motion court or on direct appeal of the initial post-conviction motion.
This is even true in Vogl’s case. The principal opinion ultimately holds that postconviction counsel abandoned Vogl by failing to file an amended motion or statement in lieu thereof. There is absolutely no reason that Vogl could not have asserted this claim by following the normal procedures permitted by this Court’s rules. Vogl could have filed a timely motion to vacate under Rule 75.01 or he could have filed an appeal. The failure to do so results from Vogl’s own lack of diligence at the time his initial motion was dismissed.
There is one additional concern with allowing unfettered “motions to reopen” a post-conviction proceeding. In my view, this Court should refuse to permit “motions to reopen” filed outside of the normal time limit to preserve potential relief under federal habeas corpus proceedings. In denying relief in Gehrke, this Court stated as follows:
Federal habeas corpus proceedings require a movant to exhaust all available state remedies, including appeal and postconviction remedies, before bringing a federal claim. See Coleman v. Thompson, 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). State court remedies are exhausted “when they are no longer available, regardless of the reason for their unavailability.” Wood-ford v. Ngo, 548 U.S. 81, 92-93,126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). If the scope of abandonment were expanded further, it is foreseeable that federal habeas corpus claims could be denied due to a movant’s failure to bring a motion to reopen postconviction proceedings. This would frustrate the legitimate goals of a prompt comprehensive review and finality.
Gehrke, 280 S.W.3d at 59.
I understand that this result may appear unsympathetic because Vogl did not have counsel to guide him through the appeals process. However, as the record demonstrates, Vogl discovered all of his claims and prepared all of the motions leading to this third motion on his own, without counsel. The record also suggests that, on *238 multiple occasions, Vogl reached out to his appointed post-conviction counsel, who answered several of Vogl’s questions about filing this third motion. Furthermore, in postconviction proceedings, Rule 30.08 allows the movant to seek leave to file a notice of appeal out of time within 12 months of the judgment becoming final.[7] This gave Vogl a full year to collect all the information that is now the basis for his third Rule 24.035 motion and seek leave to appeal.[8]
The Principal Opinion’s Discussion of “Counsel’s Failure to Ascertain” is Unnecessary
Had Vogl asserted his claim in a timely manner, he likely would have alleged sufficient facts that, if true, would have proven that he was abandoned by post-conviction counsel under this Court’s recent definition of “abandonment” in Price v. State, 422 S.W.3d 292 (Mo. banc 2014). This Court made clear in Price that “abandonment” by post-conviction counsel occurs only in one of two situations: 1) when appointed postconviction counsel fails to comply with Rule 24.035(e) by failing to file either an amended motion or a statement explaining why no amended motion is required or 2) when appointed post-conviction counsel files an untimely amended motion. Id. at 297-98. Vogl’s third Rule 24.035 motion alleged sufficient facts that, if true, would prove that his post-conviction counsel failed to file either an amended motion or a statement explaining why no amended motion was required. Vogl alleges his postconviction counsel’s only action was to file a motion to rescind his appointment as counsel on the ground that Vogl’s initial motion was untimely. Counsel’s motion to rescind appointment did not meet the basic requirements of Rule 24.035(e); therefore, Vogl’s allegations, if proven, would constitute abandonment.
Despite the fact that this straightforward analysis resolves the issue, the principal opinion could be misconstrued to extend the abandonment doctrine into an evaluation of whether counsel met its “duty to ascertain” whether a movant has timely filed the pro se motion required by Rule 24.035. This analysis is neither necessary for the principal opinion’s resolution of this case, nor supported by this Court’s precedent.
The opinion specifically holds, “Here, Mr. Vogl’s appointed counsel failed to comply with Rule 24.035(e) because he did not file either an amended motion or a statement setting out facts demonstrating that counsel took actions to ensure why no amended motion was needed.” This hold *239 ing renders the principal opinion’s discussion of the “duty to ascertain” unnecessary, and in my view, the discussion will lead to a resurgence of multiple “motions to reopen” or alternatively correctly titled “motions for relief due to abandonment” that are nothing more than re-characterized claims of ineffective assistance of post-conviction counsel.[9]
Res Judicata Prohibits Vogl’s Second Abandonment Claim
The principal opinion suggests that the res judicata issue is raised “sua sponte” The principal opinion notes that the State has not asserted that Vogl’s prior motions constituted a “procedural bar” to the adjudication of his current motion. However, the “failure” to raise this issue at this point does not constitute a waiver of the issue. The post-conviction rules do not require a responsive pleading. Rule 24.035(g). In this case, the State did not file a responsive pleading because the circuit court swiftly denied relief without one, specifically pointing to its previous judgment overruling the original claim of abandonment. Therefore, the State has not “waived” any claim that Vogl was not abandoned, including that Vogl’s claim is barred by res judicata due to his failure to perfect either his original post-conviction appeal or the appeal of his original abandonment claim.
Res Judicata is an affirmative defense. Ordinarily, the party seeking to benefit by it must either plead in an answer, raise it by an amendment to the pleadings, or present it by motion to dismiss. However, it is a defense that not only benefits the defending party, but also 'benefits the court’s ability to efficiently administer justice.
In this regard, - the United States Supreme Court has recognized:
“if a court is on notice that it has previously decided the issue presented, the court may dismiss the action sua sponte, even though the defense has not been raised. This result is fully consistent with the policies underling res judicata: it is not based solely on the defendant’s interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste.”
Arizona v. California, 530 U.S. 392, 412, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000).
Patrick V. Koepke Const. Inc. v. Woodsage Const. Co., 119 S.W.3d 551, 555 (Mo.App. 2003) (some internal citations omitted). *240 Moreover, this Court has stated that, although res judicata is an affirmative defense, it need not be asserted in a responsive pleading because res judicata is in essence an allegation that the plaintiff has failed to state a claim upon which relief may be granted. Chesterfield Village, Inc. v. City of Chesterfield, 64 S.W.3d 315, 318 n. 1 (Mo. banc 2002). As such, res judica-ta may be raised in a motion to dismiss. Id.
As pointed out in Koepke, while caution should be exercised in applying res judica-ta sua sponte, a well recognized exception to this caution exists when the defense arises out of the court’s own earlier judgment. That is exactly what this Court is reviewing here — the motion court expressly referenced its previous judgment denying abandonment relief in its judgment denying relief on this motion. Under these facts, it is totally inappropriate for this Court to hold that ruling is “clearly erroneous.” In my view, the judicially efficient resolution is to deny relief now rather than remand and require the State to file a motion to dismiss that the motion court will surely sustain.
The principal opinion suggests that the Court should not review, sua sponte, the issue of res judicata because the “motion court dismissed Mr. Vogl’s current abandonment claim as procedurally barred ... Mr. Vogl’s claim of abandonment has never been adjudicated on the merits.” However, the motion court’s 2011 order states that the circuit court would take no action on Vogl’s claims of abandonment because Vogl failed to timely file his original motion. Or, in other words, because Vogl had not filed a timely original motion, the motion court determined that he could not have been abandoned by counsel. Moreover, any failure to obtain a final adjudication would stem from Vogl’s own failure to appeal his initial motion and his failure to perfect his second appeal. To state that Vogl has not received a final adjudication of his abandonment claim is to: 1) ignore the language of the motion court’s order; 2) ignore Vogl’s multiple failures to pursue his abandonment claims through the procedures available to him; and 3) ignore the fact that, until the principal opinion ovei'-ruled Stewart v. State and Morgan v. State today, Vogl’s claims were considered claims of ineffective assistance of post-conviction counsel and not abandonment.
As Judge Wilson’s dissent points out, even assuming that the motion court’s 2011 order dismissed Vogl’s abandonment claims “without prejudice,”
A dismissal without prejudice may operate to preclude the party from bringing another action for the same cause and may be res judicata of what the judgment actually decided. Mahoney v. Doerhoff Surgical Services, 807 S.W.2d 503, 506 (Mo. banc 1991). An appeal from such a dismissal can be taken where the dismissal has the practical effect of terminating the litigation in the form cast or in the plaintiffs chosen forum. City of Chesterfield v. Deshetler Homes, 938 S.W.2d 671, 673 (Mo.App.1997).
Chromalloy American Corp. v. Elyria Foundry Co., 955 S.W.2d 1, 3 (Mo. banc 1997); see also Naylor Senior Citizens Housing, LP v Side Const. Co., 423 S.W.3d 238, 242-43 (Mo. banc 2014). Clearly, both Vogl and the court of appeals believed that the circuit court’s order terminated the litigation in 2011, as evidenced by Vogl’s appeal from that order. Because the express terms of the order terminated the litigation so that Vogl would have a final judgment to appeal the motion court’s ruling, the subsequent abandonment litigation is barred by res judicata.
This Court has an obligation to ensure compliance with its post-conviction rules. *241 Dorris v. State, 360 S.W.3d 260, 268 (Mo. banc 2012). In Dorris, this Court specifically held that the time limitations for the post-conviction rules cannot be waived by either party. 360 S.W.3d at 270. This Court held that the time limitations established by the rules for post-conviction relief were mandatory to preserve the finality of judgments and could not be waived. Id. In my -view, this same conclusion applies to the post-conviction rules prohibiting successive motions. Because permitting successive motions frustrates the post-conviction relief system’s need for finality, the State may not “waive” the rule violation, either inadvertently or purposefully. My view that this second abandonment claim is barred by res judicata is in accord with this Court’s recent statement that parties cannot concede or stipulate to legal issues. State v. Hardin, 429 S.W.3d 417, 421 n. 4 (Mo. banc 2014) (stating that the State could not concede that the defendant had been subject to double jeopardy).
Lastly, “this Court will affirm on any ground that supports the circuit court’s judgment, regardless of the grounds on which the circuit court relied.” Stanley v. State, 420 S.W.3d 532, 543 n. 9 (Mo. banc 2014); see also Rizzo v. State, 189 S.W.3d 576, 578 (Mo. banc 2006). While it could be argued that the precise grounds on which the motion court overruled this third motion are not clear, it appears that the motion court ruled, without the issue having been raised by the State, that its rulings on Vogl’s prior motions prohibited the requested relief. In light of the docket entry and this Court’s ability to affirm on any ground that supports the judgment, the determination that Vogl’s current claim of abandonment is barred by res judicata should be addressed at this time.
Conclusion
I disagree with the principal opinion’s holding that the abandonment doctrine entitles Vogl to file a third Rule 24.035 motion. Vogl had a remedy available to him years ago when the motion court dismissed his initial motion. At that time, Vogl could have appealed the dismissal of his motion pursuant to Rule 24.035(k) or sought to vacate the judgment within the time period allowed by Rule 75.01. Because he failed to pursue these available remedies, Vogl is not entitled to relief now. Rule 24.035(£) specifically prohibits successive post-conviction relief motions. To grant Vogl a remand for a merits hearing on his allegations of abandonment, whether his motion is characterized as a “motion to reopen” or “motion for post-conviction relief due to abandonment” is to ignore the plain language of Rule 24.035(Z).
In McDaris, this Court stated that the motion court should examine abandonment prior to ruling on the motion by discussing the issue with post-conviction counsel and allowing the post-conviction movant to reply. McDaris stated that this procedure should stand until such time as this Court changed its rules. This Court has not changed its rules to permit a different procedure for determining abandonment claims despite its authority to do so.
For the reasons stated above, I would affirm the judgment. I also concur in the opinion of Judge Wilson that res judicata bars Vogl from re-litigating his abandonment claim.

. The motion court in this case specifically stated as a basis for dismissal of his second abandonment claim that it had previously dismissed the original claim of abandonment.

. Honoring Rule 24.035(Z)’s prohibition against successive motions is particularly important because the only ineffective assistance of counsel claims that may be brought in a Rule 24.035 motion for post-conviction relief after a guilty plea must allege that, due to counsel’s ineffectiveness, the movant’s guilty plea was not entered knowingly, voluntarily, and intelligently. Stanley v. State, 420 S.W.3d 532, 544 (Mo. banc 2014). In this case, Vogl’s third motion merely alleged that he was abandoned by counsel, and his initial motion merely alleged that the sentencing judge "did not look at” a number of character reference letters and a letter from a doctor stating that Vogl should stay in therapy rather than go to prison. These allegations do not state a claim for relief under Rule 24.035.

. The court of appeals recently handed down a case that demonstrates this danger. In Middleton v. State, No. WD75669, 437 S.W.3d 244, 2014 WL 836534 (Mo.App. Mar. 4, *235 2014), an inmate filed a "motion to reopen” his postconviction proceedings due to abandonment, which the circuit court overruled. He appealed, and the court of appeals affirmed in a published opinion. Middleton v. State, 200 S.W.3d 140 (Mo.App.2006). Several years later, the inmate filed a second "motion to reopen,” again claiming abandonment, which the circuit court again overruled. The inmate appealed, and the court of appeals again affirmed, but only after oral argument and a second written opinion.

. Significantly, no case from this Court decided before the errant Jaynes dicta addressed abandonment as part of a "motion to reopen” a post-conviction proceeding. Each pre-Jaynes case addresses abandonment during the initial post-conviction proceeding or an appeal of the post-conviction motion's overruling without the notion of a "motion to reopen the proceeding.” See Moore v. State, 934 S.W.2d 289 (Mo. banc 1996) (dealing with two cases in which abandonment was addressed at the motion court level prior to denying relief); State v. White, 873 S.W.2d 590, 596-99 (Mo. banc 1994) (reviewing the motion court's determination during the Rule 29.15 proceeding that the movant was not abandoned), superseded on other grounds by rule as stated in Glover v. State, 225 S.W.3d 425 (Mo. banc 2007); McDaris v. State, 843 S.W.2d 369, 371 (Mo. banc 1992) (reviewing a determination by the motion court that movant was not abandoned).
These cases indicate that, before the Jaynes dicta, this Court understood the abandonment doctrine to apply only during the original post-conviction proceeding. No "motion to reopen” based on abandonment seems to have existed. This is particularly evident in Luleff, Sanders, and McDaris, each of which specifically stated that it was the initial motion court’s responsibility to conduct an independent inquiry into whether abandonment occurred before ruling on the motion in the event of a late or non-filing of the amended motion or statement that no amended motion is necessary.

. It should be noted that untimely post-conviction motions due to what Price termed "third-party interference” or "active interference” do not run afoul of the prohibition against filing a successive motion. In those cases, no initial motion will have been filed; therefore, the movant needs to file a motion seeking to file the initial post-conviction motion out of time. See Price, 422 S.W.3d at 295 n. 1, 301-06.

. In fact, the principal opinion states that the motion court need only investigate abandonment "when the record raises” such a presumption and when "the record refutes the claim of abandonment” no such inquiry is required. Op. at 229 (emphasis added).

. Rule 30.03 provides:
Where the defendant or the state has the right of appeal including appeals from an order in a post-conviction proceeding involving a prior felony conviction, but notice of appeal is not filed with the clerk of the trial court within ten days after the judgment becomes final, the defendant or the state may file a notice of appeal in the trial court if, within twelve months after the judgment becomes final, a motion for leave to file such notice is filed in the appropriate appellate court and it thereafter sustains the motion and grants such leave.
(Emphasis added).

. In addition to the rule allowing late appeals, Rule 74.06 permits a court to entertain motions seeking relief from a judgment or order. Among the reasons for relieving a party from a final judgment are that the judgment "is no longer equitable for the judgment to remain in force” and “excusable neglect.” Rule 74.06(b)(1) and (5). Such motions must be made within a reasonable time and, for certain provisions, not more than one year. This rule has not been cited by any party, but it is permitted by this Court’s rules. Even this available procedure would be preferred to ignoring this Court’s clear and express rule prohibiting the filing of a successive Rule 24.035 motion.

. Moreover, Moore v. State, cited by the principal opinion as authority for the proposition that appointed post-conviction counsel’s "failure to ascertain” all of the facts relevant to a movant's pro se motion, does not hold that such a failure actually amounts to abandonment. Rather, Moore stands for the rather unremarkable proposition that when the record shows on its face that counsel has failed to comply with the post-conviction rules, counsel will be presumed to have abandoned the movant. 934 S.W.2d 289, 292 (Mo. banc 1996). Moore remanded a case to the circuit court because counsel's statement why no amended motion was filed indicated that counsel had done nothing other than to file the statement. Id. Moore's holding stems from the fact that the Court determined that counsel essentially did nothing at all, not that counsel failed to ascertain facts that would have led to a colorable claim. Id. Counsel’s failure to perform an adequate investigation is a matter of the effectiveness of counsel and, therefore, categorically unreviewable. This is perfectly demonstrated by the two cases that the principal opinion overrules, Stewart v. State, 261 S.W.3d 678 (Mo.App.2008), and Morgan v. State, 8 S.W.3d 151 (Mo.App.1999). The movant in each case alleged that post-conviction counsel had abandoned him by failing to investigate the timeliness of the pro se motion. The court of appeals in each case held that such an allegation was better characterized as one for ineffective assistance of post-conviction counsel.